LECHE, J.
N. N. New resides at Plain Dealing, Bossier parish, La., and is a cotton planter by occupation. On or about July 3, 1919, he caused to be shipped to defendant, a corporation partly engaged in the sale of cotton at Shreveport, La., 31 bales of cotton. The shipment was made by and in the name of C. L. De Moss, a merchant and a friend of plaintiff, also residing at Plain Dealing. The cotton was received in due time by the defendant, some 17 bales, however, being in a damaged condition. That condition of the cotton is not material to the issue involved in this suit, and it is only mentioned for the purpose of accounting for the actions of some of the witnesses who testified in the case.
On the 3d day of November following, plaintiff went to Shreveport in person, some 35 miles by rail from Plain Dealing, provided with an order from De Moss to get his cotton from defendant. On November 4th, the next day, in company with R. E. Wyche, a cotton buyer, he called upon defendant, who, in accordance with the instructions of De Moss, gave him an order on the Shreveport Compress for the delivery of his 31 bales of cotton, and received from him his check for $75.-10, accrued charges on the cotton. Plaintiff, still accompanied by Wyche, called at the compress, and there Wyche, who had made him a tentative offer to buy his cotton, refused on account of the bad condition of the greater part of it to carry out his offer.
The next day, November 5th, plaintiff, who must have been in a disappointed frame of mind, and apparently uncertain as to the best *998 course to pursue, again called upon defendant, and had an interview with John Jenkins, of the defendant company. He asked Jenkins to take back his cotton. Jenkins at first refused, for the asserted reason that he needed all the warehouse space he could get to store for his regular customers, but at the hrgent solicitation of plaintiff finally yielded. He walked behind his desk, and, getting the $75 check which plaintiff had given him the day before, he returned it to plaintiff, who handed him the order he had given upon the compress company. Up to this time the facts as here related are not disputed.
Plaintiff says that this interview was held with Jenkins in the morning out on the sidewalk in front of defendant’s store, and that he instructed Jenkins at that time to sell the cotton; that he came back in the afternoon to find out if it had been sold; that at this second interview, O. F. Scripture, was present and that he again instructed Jenkins to sell. Scripture testifies that he was present at both interviews, and that he heard plaintiff tell Jenkins to sell the cotton.
Plaintiff instituted the present suit on October 25, 1920. His demand is based upon the facts to which he has testified, and is for $3,065 damages, consisting of the difference between the market value of his 31 bales of cotton on November 5, 1919, and its value on October 25, 1920, when he filed his suit.
Jenkins in his testimony denies that he ever was told or instructed by plaintiff to sell, and that he still holds the cotton subject to plaintiff’s orders.
The district court rejected the demand of plaintiff, and from that judgment plaintiff has appealed.
Plaintiff and Scripture contradict one another in a very material fact. Plaintiff states that Scripture was not present at the first interview, and Scripture says that he was present at both interviews. Plaintiff 'says that Scripture only heard one conversation between himself and Jenkins, and Scripture says that he heard both conversations. Jenkins says that his company does quite a large business; that all sales of cotton consigned to it are made by Carpenter, its regular salesman ; that no verbal orders are given to Carpenter; that as soon as an order to sell is given tile order is written, placed on a file, and that Carpenter is guided solely by the written orders on that file in negotiating sales of cotton; that this is the standard and regular custom of the house; that if plaintiff had ordered the sale of his cotton the written order would have been entered and filed and the cotton would have been sold.
While it is not impossible that Jenkins might have forgotten to write and file such an order, yet it is improbable that he should have forgotten under the unusual circumstances under which the dealings between himself and plaintiff took place.
This testimony leaves one in doubt as to whether plaintiff did give defendant any positive instruction to sell the cotton, and we would be justified in saying here thaj; plaintiff has failed to prove his case with any degree of certainty.
But there are other circumstances, however, under the facts disclosed by the record, which in our opinion are fatal to the. pretensions of plaintiff. It is shown that plaintiff returned to his home after the interviews which he had with Jenkins on November 5, 1919; that he says that he came back to Shreveport in December, 1919, or January, 1920, called on defendant, and asked to see Jenkins, but failed to see him, as he was not at the time in defendant’s place of business, but-he admits that he left no instruction as to the disposition of the cotton, although he was informed then that the cotton had not yet been sold. From that time on, plaintiff, knowing that cotton had gone up to 42 cents per pound about March or April, 1920, still failed to act, and remained quiescent. He nei *1000 ther wrote nor telephoned defendant inguiring about his cotton, or instructing defendant to sell. He waited until October, 1920, before again calling upon defendant, and he does not make clear what took place at this last interview. This line of conduct on his part is wholly inconsistent with the claims he makes in his petition and in his testimony.
We do not believe the evidence sustains his demand, and for that reason
The judgment appealed from is affirmed.