**PUTNAM & NORMAN, Inc., v. LEVEE.**

**No. 1999.**

Court of Appeal of Louisiana. First Circuit.

Oct. 4, 1939.

Ferd. C. Claiborne, of New Roads, for appellant.

Fred G. Benton, of Baton Rouge, for appellee.

OTT, Judge.

For a complete history of this case, which began its long and somewhat interesting career through the courts in July, 1931, see State ex rel. Levee v. Carruth, La.App., 149 So. 311; 179 La. 180, 153 So. 685; 180 La. 101, 156 So. 189; La.App., 160 So. 155; La. App., 172 So. 406, and La. App., 186 So. 368. If the above list is too long, any one interested in the procedural features of the case may obtain a fairly complete history of it from the opinions in it when the case was before this court on the last two occasions and as these opinions are reported in 172 So. 406 and 186 So. 368.

By reason of our last decision in the case, it is now before us on the merits to determine the correctness of the judgment rendered on the verdict of a jury in January, 1935.

The suit is for the balance alleged to be due for advances made by plaintiff to defendant on seventeen bales of cotton shipped by the latter to plaintiff, cotton brokers, in the fall of 1929. The cotton was to be held by the plaintiff and was to be sold on orders from the defendant as shipper. The plaintiff firm advanced to the defendant on the cotton at various times during the latter part of 1929 the total sum of $1220, plus freight charges of $29.75. The defendant, on February 10, 1930, in response to a request from plaintiff, mailed a check for $150 to these cotton brokers to protect the margin on account of a drop in the price of cotton, which amount was credited to defendant's account. The price of cotton continued to decline and on June 3, 1931, plaintiff sold the 17 bales of cotton, and after deducting $167.27, for commissions, insurance, handling, storage, etc., credited the net proceeds of $589.39 to the account of the defendant. The above facts are admitted, except that defendant does not admit the correctness of the charges of $167.27.

It is the contention of the defendant that at the time he sent plaintiff the check to cover the margin on the cotton in February, 1930, the price of cotton at that time was such that the check coupled with the proceeds of the cotton would have been sufficient to pay all of his account; that some two days after he sent this check he gave verbal instructions to plaintiff in its office in New Orleans to sell the cotton and close out his account; that plaintiff disregarded his instructions, and held the cotton on a declining market, and sold the cotton in June, 1931; that the amount claimed in this suit represents the decline in the market value of the cotton from February, 1930, when he gave orders to sell the cotton and the value of the cotton when it was sold in June, 1931.

As the plaintiff admits that, had the cotton been sold in February, 1930, the proceeds thereof and the check would have been sufficient to close out defendant's account, the sole question in the case is one of fact; i. e., whether or not defendant instructed plaintiff to sell the cotton in February, 1930, at which time the proceeds would have closed out the account.

The jury which tried the case the second time found that plaintiff made the amount of advances claimed and was entitled to judgment for that amount, plus the freight of $29.75, or a total of $1,249.75, with legal interest on the items covering the advances on the cotton, less legal interest on $150 paid by plaintiff on February 10, 1930. The jury failed to give defendant credit for the $150 and the proceeds of the cotton, which was evidently an oversight on the part of the jury as both parties had agreed that defendant was entitled to credit for the cash payment and the proceeds of the cotton. As the verdict of the jury was for more than claimed in the petition, plaintiff entered a remittitur for the surplus, and the court signed a judgment for the amount claimed in the petition; viz., $641.22, with legal interest thereon from June 12, 1931.

The findings of the jury had the effect of · denying the claim of defendant that he had instructed plaintiff to sell the cotton in February, 1930. We are asked by defendant to reach a different finding on this point from that reached by the jury of his peers.

The defendant testified that he was in the office of plaintiff company about February 12, 1930, two days after he had sent the check for $150; that he then told Mr. Geren, the President of plaintiff company, that he wanted the cotton sold and his account closed out; that Mr. Geren told him that he (defendant) then had sufficient credit with the cotton to cover the account; that his son was present and heard the conversation, but he does not know if the others who were present in Geren's office at the time heard the conversation. Young Levee testified to about the same effect as his father with reference to selling the cotton and closing out the account.

Mr. Geren denied that he had a conversation with the defendant on the date alleged, or on any other date, in which defendant gave instructions to sell the cotton and close out the account. Miss Powell, who was the Secretary-Treasurer of plaintiff firm and who handled most of the correspondence and records of the company, testified that she kept an instruction book in which all orders from shippers to sell their cotton were placed; that no order was placed in this book to sell defendant's cotton and no such instructions to sell the cotton were given her by anyone.

█ It was incumbent on the defendant to prove with legal certainty that he gave orders to the plaintiff to sell the cotton at a time when the price was such as to close out the account for advances. A careful review of the testimony fails to convince us that the jury was in error in its finding that defendant had not given plaintiff orders to sell the cotton as he claims. Certain facts and circumstances, in our opinion, strongly support the findings of the jury.

(1) At frequent intervals from February 1930, to the time when the cotton was sold in June, 1931, several communications were sent to defendant advising him of the condition of his account and the fact that the cotton was still on hand. For instance, on April 2, 1930, less than two months after defendant claims to have told plaintiff to sell the cotton, the latter wrote defendant a letter, enclosing a statement of his account and showing the balance due with the 17 bales of cotton on hand. In that letter the defendant was asked to check the account and if there was anything not correct or that he did not understand to advise plaintiff. No answer was made to that letter, notwithstanding the defendant claims that at that time he had given instructions to sell his cotton, and instead of owing a balance to plaintiff with the cotton still held to secure the balance, plaintiff should have owed him a small difference at that time had the cotton been sold in February, less than two months earlier. In August, September, October and December, 1930, and April and May, 1931, letters were sent defendant demanding that he put up margins to cover the decline in the market value of the cotton held for the advances. Defendant ignored these demands.

On May 28, 1931, plaintiff wrote defendant that unless he remitted $400 by the middle of the following week to bring up the margin, or made satisfactory arrangements for the account, plaintiff would sell the cotton for the best advantage

and look to the defendant for the balance. In a letter dated May 28, 1931, but not mailed until June 2nd at 10 o'clock P. M. in New Orleans, defendant replied to these demands. for the first time, and stated in that letter that he had put up the $150 margin and on more than one occasion had instructed· plaintiff to sell the cotton. As was said in the case of New v. Crawford, Jenkins & Booth, 155 La. 995, 99 So. 797, this line of conduct on the part of defendant in waiting for more than a year without replying to these demands and informing plaintiff that instructions had been given to sell the cotton in February, 1930, is not consistent with the claim that he now makes in his defense.

(2) The reason given by the defendant for not answering these numerous letters is not very satisfactory; he contents himself by saying that he did not think an answer was necessary as the account had been closed out. Some of his testimony on this point is rather non-committal by the use of such expressions as "I do not remember," and "it could be so," etc.

In an answer to the appeal, the plaintiff has asked that the judgment be amended by reducing the amount from $641.22, with legal interest from June 3, 1931, to the sum of $510.36, with legal interest from said date. The jury correctly found the total charges against defendant to be $1,249.75. While there is some dispute as to the correctness of the charges deducted from the proceeds of the cotton, we think the evidence shows that the net proceeds of $589.39 is correct and this amount, together with the check of $150, makes a total credit of $739.39, leaving a balance of $510.36, the amount to which plaintiff is asking that the judgment be reduced. While the latter amount does not take into consideration the interest on the account from the time the advances were made to June 3, 1931, we assume that plaintiff is satisfied to have the interest calculated on the balance due on June 3, 1931, when the cotton was sold.

The costs of the various proceedings on appeal seem to have been fixed or follow as a result of the decrees entered therein, except the cost in the recent mandamus proceeding which should be taxed against the defendant. The plaintiff, appellee, should pay the cost of the present appeal.

For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby amended by reducing the amount of same from $641.22 with legal interest thereon from June 3, 1931, to the sum of $510.36, with legal interest thereon from said date until paid; that plaintiff, appellee, pay the cost of the present appeal, and the defendant, appellant, pay the cost of the mandamus proceedings in which the appeal was ordered reinstated (La.App., 186 So. 368) as well as all costs incurred in the district court.